### PEOPLE *ex rel.* TITSWORTH, Commissioner, *v.* NASH, Judge.

*(Supreme Court, General Term, Fifth Department.   June, 1891.)*

1. CERTIORARI—ORDER OF COUNTY JUDGE—RIGHT TO REVIEW.

An order of the county judge confirming the report of commissioners appointed by him in proceedings to lay out a highway is not a "determination which can be adequately reviewed by an appeal to a court or to some other body or officer," (Code Civil Proc. N. Y. § 2122,) nor an order "made by a court of record * * * or a judge thereof in a special proceeding instituted in that court, or before a judge thereof, pursuant to a special statutory proceeding," nor "instituted before another judge, and transferred to or continued before the judge who made the final order," (section 1357,) but is "the determination of * * * an officer," in a case "where the writ [of *certiorari*] may be issued at common law by a court of general jurisdiction; and the right to the writ * * * is not expressly taken away by statute," (section 2120,) and may be reviewed by *certiorari,* since the proceeding was not instituted before the county judge or any other judge, the action taken by the judge being not in his capacity as judge of any court, but as an officer specially designated by statute.

2. LAYING OUT HIGHWAYS—DISAGREEMENT OF COMMISSIONERS.

    1 Rev. St. N. Y. p. 516, § 72, as amended by Laws N. Y. 1881, c. 513, §§ 73–75, provides that "when the commissioners of highways of any town * * * shall disagree with the commissioners of any other town * * * relating to the laying out of a new road * * * extending into both towns, * * * the commissioners of both towns shall meet, * * * and make their determination in writing upon such subject of disagreement," and, in case of failure to agree, certify that fact to a judge of the supreme court, who may appoint new commissioners, etc. *Held,* that the provisions of this section apply also to a failure of commissioners to agree in proceedings had under the next succeeding section, which provides for laying out a road on the town line between two towns, and not extending longitudinally into either.

3. DESCRIPTION OF HIGHWAY—IMMATERIAL VARIANCE.

    A highway was designated in an application to open the same as beginning at the intersection of an existing highway with a town line, and running thence on the town line east to M. In the commissioners' certificate of disagreement it was described as beginning at M., and running thence west on the town line to a point on said existing highway near K. As a matter of fact K. was a mile distant from the point of intersection of the town line with the existing highway. *Held,* that the discrepancy was immaterial, since the eastern terminus in the commissioners' description was fixed by the intersection of the town line with the well-known existing highway, as to which there could be no possibility of mistake, and that the description of K. as a monument must be disregarded as inconsistent with the unmistakable description given.

Application by John P. Titsworth, commissioner of highways of the town of Groveland, for *certiorari* to Edwin A. Nash, county judge of Livingston county, to review an order made by him, confirming the report of commissioners appointed by him in proceedings to lay out a highway.

Argued before DWIGHT, P. J., and MACOMBER, J.

*A. J. Abbott,* for relator. *C. J. Bissell,* for commissioner of highways of the town of West Sparta.

DWIGHT, P. J. The objection that *certiorari* will not lie to review the order in question is not well taken. The order is not a "determination which can be adequately reviewed by an appeal to a court or to some other body or officer." Code Civil Proc. § 2122. The order is not one "made by a court of record * * * or a judge thereof, in a special proceeding instituted in that court, or before a judge thereof, pursuant to a special statutory provision," nor "instituted before another judge, and transferred to or continued before the judge who made the final order," (Id. § 1357;) and therefore an appeal cannot be taken therefrom. In proceedings of this character the county judge acts, not as a judge of any court, but as an officer, specially designated by statute, under his title of office. Besides, the proceeding is not instituted before him, or before any other judge, but before a commissioner or commissioners of highways of the proper town or towns. The writ of *certiorari* was therefore properly issued in this case, "to review the determination of * * * an officer," (Id. § 2120,) in a case "where the writ may be issued at common law by a court of general jurisdiction, and the right to the writ * * * is not expressly taken away by statute," (Id. subdiv. 2.) By the return of the county judge to the writ of *certiorari* it appears that the proceeding was instituted by the separate application of a resident of each of the towns of Groveland and West Sparta, liable to be assessed for highway labor therein, addressed to the commissioner of highways of each of those towns, respectively, for the laying out of a new highway. The description of the proposed new highway was the same in both applications, and was as follows: "To commence upon the easterly side of the now present highway leading from Dansville to Mt. Morris, at a point upon the town line between the said town and the town of [in the one case Groveland, in the other West Sparta;] thence easterly upon said town line to McNair's station." It further appears from the return that the commissioners of the towns of Groveland and West Sparta, respectively, united in a certificate to the county judge of Livingston county that they were "unable to agree in regard to the open-

ing and construction of a proposed highway, extending into both of said towns, beginning at or near the Erie Railway depot in said town of Groveland, and running thence westerly along or near the town line between said towns of Groveland and West Sparta, to a point in the highway leading from Dansville to Mt. Morris, near Kyserville, in said town of West Sparta." The commissioners also certified that juries had been drawn in each of said towns to consider and certify as to the necessity and propriety of the said proposed highway, and that the jury in the town of West Sparta certified that the road was necessary and proper, and the jury in the town of Groveland that it was not necessary or proper; and the commissioners of highways thereupon ask for the appointment of three commissioners to lay out the road and appraise the damages. It further appears from the return that the county judge thereupon made an order appointing three commissioners "to hear and decide upon all questions relating to the laying out of said road," which was described in the order as it was in the certificate of disagreement of the highway commissioners, above quoted; and that the commissioners so appointed went on and viewed the line of the proposed road; took evidence relating to its location, determined to lay out the road, located it according to a survey and description contained in their report, and ascertained and appraised the damages consequent thereon to the owners and occupants of lands taken therefor. The description of the road thus laid out is as follows: "Beginning at a point in the said town of Groveland, where the center line of the highway leading from the flouring-mill at Groveland station to McNair's station meets the east line of the lands of the Erie and Genesee Valley R. R.; thence westerly on a straight line to the point where the division line of the towns of Groveland and West Sparta crosses the west line of the land of the Erie and Genesee Valley R. R.; thence westerly along the division line between said towns to a point on the said town line 350 feet east of the Dansville and Mt. Morris highway; thence south, 51° 51′ west, to a point in the east line of the said Dansville and Mt. Morris highway in said town of West Sparta; said line to be the central line of said road, and said road to be three rods in width." All this, with the evidence taken by them, and other matters, the commissioners reported to the county judge, who thereupon made his order in all things confirming such report. The *certiorari* was issued on the application of the relator, the commissioner of highways of the town of Groveland, to review that order, and all the proceedings leading up to it; and it is argued here that the county judge had no jurisdiction of the proceeding, or to make either of the orders contained in his return; nor, consequently, had the three commissioners any jurisdiction to lay out the road, or to do any of the acts in respect thereto mentioned in their report. Whether this contention is well based depends upon the true construction of the provisions of the statute relating to highways between towns as they existed prior to the much-needed revision of the highway laws by the act of 1890. Those provisions, in their full extent, will be found to be contained in section 72 *et seq.* of article 4 of chapter 16 of part 1 of the Revised Statutes, (1 Rev. St. p. 516, § 72, as amended by Laws of 1881, p. 513, §§ 73–75.) It was under section 72 that all the steps in this proceeding were taken. The application of that section is shown by its introductory words, which, so far as it relates to towns of the same county and to new roads, are as follows: "When the commissioners of highways of any town * * * shall disagree with the commissioners of any other town * * * relating to the laying out of a new road * * * extending into both towns, * * * the commissioners of both towns shall meet," etc. The next three or four sections (section 73 *et seq.*) contain special provisions relating to the laying out of a highway "upon the line between two towns." The contention of the relator (appellant) in this case is that sections 72 and 73 apply each to a distinct and separate class of highways; that the former class includes only those which cross the line of towns, extending

longitudinally into each; while the latter class includes all those which are laid out (in the language of section 73) "upon such line, or as near thereto, as the convenience of the ground will permit." The difficulty with this construction of the section is that its adoption would leave no provision for cases of the latter class in which the commissioners of the two towns should fail to agree upon the necessity, propriety, and location of the road, which would be a state of things as liable to occur in the case of roads of the latter class as in the case of those of the former. Section 73 provides that town-line roads shall be laid out by the joint action of commissioners of both towns, and the next following sections prescribe special duties for those commissioners, in connection with the laying out of such roads. But, unless recourse can be had to the provisions of section 72, there is absolutely no provision in the statute for the laying out of a town-line road if the commissioners of the two towns fail to agree. This consideration seems to us controlling in favor of the conclusion that the provisions of section 72 were intended to apply equally to roads which lie upon as to those which cross the town line, and to prescribe a mode of procedure to procure the laying out of a road of either class in case of a disagreement of the commissioners of the two towns. The construction adopted does no great violence to the language of section 72. A road may, without much impropriety, be described as extending into both towns when it lies partly in each, though the extension into either may be lateral, or for short distances alternately, rather than continuous in the direction of the general course of the road. At least it may be said that the uncertainty or incongruity of the provisions in question is slight, compared with that exhibited by many of the provisions of the highway law as it stood before the late revision.

Another objection to the proceeding is that the description of the proposed road contained in the certificate of disagreement of the two commissioners is inconsistent with that contained in the original application for the laying out of the road, and also with the survey and description contained in the report of the three commissioners. But upon careful comparison the discrepancy will not be found to be essential. The description in the application began at the west end of the proposed road, where the Dansville and Mt. Morris road crosses the town line, and ran east on that line to McNair's station. The description in the certificate of disagreement began at the east end of the road, at the railroad station, which we understand to be McNair's, and ran west along the town line to a point in the same Dansville and Mt. Morris road, near Kyserville. The only discrepancy between the two descriptions is that in the latter the western terminus of the road is described as being near Kyserville. The terminus is necessarily the same, because it is at the point of intersection of the town line with the well-known highway mentioned. It seems that in point of fact Kyserville is nearly a mile south and east of that point. The mistake seems not to have been in the location of the terminus of the road, but in the location of Kyserville, which we are told is a collection of not more than two or three houses. The case is clearly one where course and distance must prevail over monuments, or, rather, perhaps, where one monument must prevail over another; for here the course westerly along the town line between Groveland and West Sparta to the intersection of that line with the Dansville and Mt. Morris road is absolutely definite, and not to be misunderstood because the point thus reached is erroneously described as being near another point from which it is in fact nearly a mile distant. The authorities are abundant which justify the disregard of monuments where the mention of them is manifestly inconsistent with the description intended. *Baldwin* v. *Brown,* 16 N. Y. 361; *Higinbotham* v. *Stoddard,* 72 N. Y. 94. So, also, the course and location of the road adopted by the three commissioners, and described in their report, deviate no further from the previous descriptions than was entirely justified under the statute. 1 Rev. St.

c. 516, § 73, *supra.*  It seems that the contention of the relator before the three commissioners did not embrace the objection to their jurisdiction, nor to that of the county judge, argued here, but was in favor of the location of the proposed road on a line, direct from McNair's station, in a south-westerly direction, to Kyserville, as a more eligible route than the one petitioned for, and upon which the road was located.  Of that route it is sufficient to say that it was not the road petitioned for, and that, if it had been, all the proceedings here reviewed would have been clearly without jurisdiction.  It was a route wholly within the town of West Sparta, and section 72, under which all the proceedings were taken, could have had no application to the case.

No other objection than those considered has been argued before us.  The determination of the commissioners and of the county-judge of Livingston county, confirmed, with costs.